Benjamin Heikali (SBN 307466)
**FARUQI & FARUQI, LLP**
10866 Wilshire Boulevard, Suite 1470
Los Angeles, CA 90024
Telephone: (424) 256-2884
Facsimile: (424) 256-2885
E-mail:  bheikali@faruqilaw.com

[Additional Captions on Signature Page]

*Attorney for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLES GLASS, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> WAGEWORKS, INC., STUART C. HARVEY, JR., THOMAS A. BEVILACQUA, EDGAR O. MONTES, GEORGE PATRICK SCANLON, BRUCE G. BODAKEN, JEROME D. GRAMAGLIA, ROBERT L. METZGER, and CAROL GOODE, <br><br> Defendants. | Case No. 3:19-cv-04532 <br><br> **CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934** <br><br> **JURY TRIAL DEMANDED** |

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

Plaintiff Charles Glass ("Plaintiff"), by his undersigned attorneys, alleges upon personal knowledge with respect to himself, and information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1.      This action is brought as a class action by Plaintiff on behalf of himself and the other public holders of the common stock of WageWorks, Inc. ("WageWorks" or the "Company") against the Company and the members of the Company's board of directors (collectively, the "Board" or "Individual Defendants," and, together with WageWorks, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), SEC Rule 14a-9, 17 C.F.R. 240.14a-9, and Regulation G, 17 C.F.R. § 244.100, in connection with the proposed merger (the "Proposed Transaction") between WageWorks and HealthEquity, Inc. ("HealthEquity").

2.      On June 26, 2019, the Board caused the Company to enter into an agreement and plan of merger ("Merger Agreement"), pursuant to which the Company's shareholders stand to receive $51.35 in cash for each share of WageWorks stock they own (the "Merger Consideration").

3.      On July 19, 2019, in order to convince WageWorks shareholders to vote in favor of the Proposed Transaction, the Board authorized the filing of a materially incomplete and misleading Form PREM14A Preliminary Proxy Statement with the Securities and Exchange Commission ("SEC"), in violation of Sections 14(a) and 20(a) of the Exchange Act.  The materially incomplete and misleading Proxy violates both Regulation G (17 C.F.R. § 244.100) and SEC Rule 14a-9 (17 C.F.R. 240.14a-9), each of which constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act. On July 29, 2019, the Company filed a Form DEFM14A Definitive Proxy Statement (the "Proxy") that did not correct the materially incomplete and misleading nature of the preliminary proxy.

4.      While touting the fairness of the Merger Consideration to the Company's shareholders in the Proxy, Defendants have failed to disclose certain material information that is

- 1 -

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

Case No. 3:19-cv-04532

necessary for shareholders to properly assess the fairness of the Proposed Transaction, thereby violating SEC rules and regulations and rendering certain statements in the Proxy materially incomplete and misleading.

5. In particular, the Proxy contains materially incomplete and misleading information concerning: (i) the financial projections for the Company that were prepared by the Company and relied on by Defendants in recommending that WageWorks shareholders vote in favor of the Proposed Transaction; and (ii) the summary of certain valuation analyses conducted by WageWorks's financial advisor, Evercore Group L.L.C. ("Evercore") in support of its opinion that the Merger Consideration is fair to shareholders, on which the Board relied.

6. It is imperative that the material information that has been omitted from the Proxy is disclosed prior to the forthcoming vote to allow the Company's shareholders to make an informed decision regarding the Proposed Transaction.

7. For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act, based on Defendants' violation of (i) Regulation G (17 C.F.R. § 244.100) and (ii) Rule 14a-9 (17 C.F.R. 240.14a-9). Plaintiff seeks to enjoin Defendants from holding the shareholder vote on the Proposed Transaction and taking any steps to consummate the Proposed Transaction unless, and until, the material information discussed below is disclosed to WageWorks shareholders sufficiently in advance of the vote on the Proposed Transaction or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act.

9. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

1   present in this District for jurisdictional purposes or has sufficient minimum contacts with this

2   District as to render the exercise of jurisdiction over Defendant by this Court permissible under

3   traditional notions of fair play and substantial justice.

4        10.    Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. §

5   78aa, as well as under 28 U.S.C. § 1391, because WageWorks maintains its principal executive

6   offices in this District.

7                                        **PARTIES**

8        11.    Plaintiff is, and at all relevant times has been, a holder of WageWorks common

9   stock.

10       12.    Defendant WageWorks is incorporated in Delaware and maintains its principal

11  executive offices at 1100 Park Place, 4th Floor, San Mateo, California 94403. The Company's

12  common stock trades on the NYSE under the ticker symbol "WAGE."

13       13.    Individual Defendant Stuart C. Harvey, Jr. is WageWorks's Chairman and has been

14  a director of WageWorks since September 2018.

15       14.    Individual Defendant Thomas A. Bevilacqua is WageWorks's lead director and has

16  been a director of WageWorks since November 2009.

17       15.    Individual Defendant Edgar O. Montes is WageWorks's President and Chief

18  Executive Officer and has been a director of WageWorks since April 2018.

19       16.    Individual Defendant George Patrick Scanlon has been a director of WageWorks

20  since October 2018.

21       17.    Individual Defendant Bruce G. Bodaken has been a director of WageWorks since

22  September 2005.

23       18.    Individual Defendant Jerome D. Gramaglia has been a director of WageWorks

24  since November 2002.

25       19.    Individual Defendant Robert L. Metzger has been a director of WageWorks since

26  February 2016.

27                                         - 3 -

28  **CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF
    THE SECURITIES EXCHANGE ACT OF 1934**

1    20.    Individual Defendant Carol Goode has been a director of WageWorks since April 2019.

21.    The Individual Defendants referred to in paragraphs 13-20 are collectively referred to herein as the "Individual Defendants" and/or the "Board."

## CLASS ACTION ALLEGATIONS

22.    Plaintiff brings this class action pursuant to Fed. R. Civ. P. 23 on behalf of himself and the other public shareholders of WageWorks (the "Class").  Excluded from the Class are Defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any Defendant.

23.    This action is properly maintainable as a class action because:

    a.    The Class is so numerous that joinder of all members is impracticable.  As of July 26, 2019, there were approximately 41,000,000 shares of WageWorks common stock outstanding, held by hundreds of individuals and entities scattered throughout the country.  The actual number of public shareholders of WageWorks will be ascertained through discovery;

    b.    There are questions of law and fact that are common to the Class that predominate over any questions affecting only individual members, including the following:

    i)    whether Defendants disclosed material information that includes non-GAAP financial measures without providing a reconciliation of the same non-GAAP financial measures to their most directly comparable GAAP equivalent in violation of Section 14(a) of the Exchange Act;

    ii)    whether Defendants have misrepresented or omitted material information concerning the Proposed Transaction in the Proxy in violation of Section 14(a) of the Exchange Act;

- 4 -

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

iii)     whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and

iv)     whether Plaintiff and other members of the Class will suffer irreparable harm if compelled to vote their shares regarding the Proposed Transaction based on the materially incomplete and misleading Proxy.

c.     Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class;

d.     Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class;

e.     The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for the party opposing the Class;

f.     Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole; and

g.     A class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

## SUBSTANTIVE ALLEGATIONS

**I.     The Proposed Transaction**

24.     WageWorks administers consumer-directed benefits that allow employees to lower their tax expense and provide healthcare related tools for employers to provide to their employees. The Company's consumer-directed benefit programs include pre-tax spending accounts, health and dependent care flexible spending accounts, health reimbursement arrangements and commuter

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

Case No. 3:19-cv-04532

benefit services. The programs allow employees to use pre-tax dollars to pay for certain expenses related to their healthcare, dependent care and commuter expenses.

25.     On June 27, 2019, WageWorks and HealthEquity issued a joint press release announcing the Proposed Transaction, which states in pertinent part:

> DRAPER, Utah and SAN MATEO, Calif., June 27, 2019 (GLOBE NEWSWIRE) -- HealthEquity, Inc. (NASDAQ: HQY) ("HealthEquity"), the nation's largest independent health savings account ("HSA") non-bank custodian, and WageWorks, Inc., (NYSE: WAGE) ("WageWorks"), a leader in administering HSAs and complementary consumer-directed benefits ("CDBs"), today announced that they have entered into a definitive agreement under which HealthEquity will acquire all of the issued and outstanding shares of common stock of WageWorks for $51.35 per share in cash, representing a total enterprise value of approximately $2 billion. The all-cash offer represents a 28% premium to the volume weighted average closing price of WageWorks shares for the 30 trading days prior to HealthEquity's acquisition proposal becoming public on April 29, 2019.

> The acquisition is expected to give HealthEquity access to more of the fast-growing HSA market by expanding its direct distribution to employers and benefits advisors as a single source, premier provider of HSAs and complementary CDBs, including flexible spending accounts, health reimbursement arrangements, COBRA administration and commuter accounts. Its focus on member engagement and remarkable service enables HealthEquity to more fully meet the needs of employers, partners and a broader range of consumers along the continuum of health savings.

> Jon Kessler, President and CEO of HealthEquity, commented on the acquisition, "Acquiring WageWorks positions us to accelerate the market-wide transition to HSAs, with greater market access and an end-to-end proprietary platform built to drive members to spend smarter while saving for healthcare in retirement. Together, we can meet employers and employees wherever they are on their journeys to connect health and wealth, while simultaneously accelerating our growth in an expanding industry. This transaction is compelling for team members and stockholders of both companies and it accelerates the strategic goals of both companies immediately by adding WageWorks' market-leading CDB services to HealthEquity's highly acclaimed HSA platform."

> Edgar Montes, President and CEO of WageWorks, noted: "The combination of WageWorks and HealthEquity will be transformative in our industry and will amplify our impact among clients, brokers and policymakers. Together with HealthEquity, WageWorks can bring broader, deeper, more innovative solutions to our customers – giving them greater choice and peace of mind. This transaction recognizes and reflects our strong brand and reputation in the market."

- 6 -

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

Stuart C. Harvey, Jr., Executive Chairman of WageWorks, said: "This transaction underscores everything we've accomplished as we have worked to rebuild WageWorks and emerge stronger than ever. Our Board of Directors, in line with its fiduciary duties, worked with financial and legal advisors to carefully review the HealthEquity proposal in the context of our business and the industry as a whole, and following that review we are pleased to deliver to WageWorks stockholders the premium value inherent in this transaction."

**Financial Details**

HealthEquity has identified significant synergy opportunities and anticipates approximately $50 million in annualized, on-going synergies that will be realized within 24 to 36 months of closing, primarily through custodial and interchange revenue and operating efficiencies. HealthEquity also anticipates generating significant incremental revenue synergies over time as the combined client base takes advantage of the complete offering.

HealthEquity has received from Wells Fargo Bank a debt commitment to finance the acquisition. HealthEquity expects to deleverage rapidly through strong, predictable future cash flow and growth.

The transaction has been approved by the boards of directors of both HealthEquity and WageWorks and is subject to WageWorks' stockholder approval, regulatory approvals and other customary closing conditions, but is not subject to the availability of financing. It is expected to close before year-end. HealthEquity expects to provide guidance on the future financial impact of the transaction on or before the closing of the transaction.

Following the close of the transaction, Jon Kessler will serve as President and CEO of the combined company. Kessler continued, "We look forward to welcoming the talented WageWorks team into HealthEquity's "purple" culture of remarkable service to our customers and to each other. This transaction will open new opportunities for both team members and partners. We are committed to ensuring a smooth transition for all of our stakeholders as we expand the benefits we can offer."

**Advisors**

Willkie Farr & Gallagher LLP is serving as legal counsel to HealthEquity. Perella Weinberg Partners LP and Wells Fargo Securities are serving as financial advisors to HealthEquity. WageWorks has engaged Wilson Sonsini Goodrich & Rosati P.C. for legal counsel and Evercore as financial advisor.

- 7 -

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

**Investor Conference Call**

HealthEquity will hold a conference call to discuss the transaction with investors on Thursday, June 27, 2019, at 8:00 a.m. ET.

HealthEquity Investor Conference Call
Date:   June 27, 2019
Time:   8:00 a.m. Eastern Time / 6:00 a.m. Mountain Time
Dial-In:       1-844-791-6252 (US and Canada)
            1-661-378-9636 (International)
Conference ID:       6767699
Webcast:       ir.healthequity.com
A presentation deck will be made available shortly before the conference call.

**About HealthEquity**

HealthEquity connects health and wealth, delivering health savings account (HSA) and other consumer driven health and retirement solutions in partnership with over 45,000 employers and 141 health, retirement and other benefit plan providers nationwide. HealthEquity members have access to its end-to-end platform and remarkable "purple" service to become consumers of healthcare while building health and retirement savings for tomorrow. HealthEquity is the custodian of $8.3 billion in assets for 4.1 million HSA members nationwide. For more information, visit www.HealthEquity.com.

**About WageWorks**

WageWorks, Inc. (NYSE: WAGE) is a leader in administering Consumer-Directed Benefits (CDBs). WageWorks is solely dedicated to administering CDBs, including pre-tax spending accounts, such as Health Savings Accounts (HSAs), health and dependent care Flexible Spending Accounts (FSAs), Health Reimbursement Arrangements (HRAs), as well as Commuter Benefit Services, including transit and parking programs, wellness programs, COBRA, and other employee benefits. WageWorks is headquartered in San Mateo, California, with offices in major locations throughout the United States. For more information, visit www.wageworks.com.

26.     WageWorks is well-positioned for financial growth and the Merger Consideration fails to adequately compensate the Company's shareholders. It is imperative that Defendants disclose the material information they have omitted from the Proxy, discussed in detail below, so that the Company's shareholders can properly assess the fairness of the Merger Consideration for

- 8 -

themselves and make an informed decision concerning whether or not to vote in favor of the Proposed Transaction.

27. If the false and/or misleading Proxy is not remedied and the Proposed Transaction is consummated, Defendants will directly and proximately have caused damages and actual economic loss (i.e. the difference between the value to be received as a result of the Proposed Transaction and the true value of their shares prior to the merger), in an amount to be determined at trial, to Plaintiff and the Class.

## II. The Materially Incomplete and Misleading Proxy

28. On July 19, 2019, Defendants caused the preliminary proxy to be filed with the SEC in connection with the Proposed Transaction. The proxy solicits the Company's shareholders to vote in favor of the Proposed Transaction.  Defendants were obligated to carefully review the proxy before it was filed with the SEC and disseminated to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions.  However, the proxy misrepresents and/or omits material information that is necessary for the Company's shareholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act. On July 29, 2019, Defendants caused the Proxy to be filed. The Proxy did not correct the materially incomplete and misleading nature of the preliminary proxy and, thus, continues to violate Sections 14(a) and 20(a) of the Exchange Act.

### *The Materiality of Financial Projections*

29. A company's financial forecasts are material information a board relies on to determine whether to approve a merger transaction and recommend that shareholders vote to approve the transaction.  Here, the Proxy discloses "[i]n connection with the merger, our management prepared and provided to the WageWorks board in connection with its evaluation of the merger, and to Evercore, its financial advisor, in connection with its financial analyses . . .

- 9 -

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

Case No. 3:19-cv-04532

certain nonpublic, internal financial projections regarding WageWorks' future performance for fiscal years 2019 through 2024 . . . ." Proxy 46.

30.   When soliciting proxies from shareholders, a company must furnish the information found in Schedule 14A (codified as 17 C.F.R. § 240.14a-101). Item 14 of Schedule 14A sets forth the information a company must disclose when soliciting proxies regarding mergers and acquisitions. In regard to financial information, companies are required to disclose "financial information required by Article 11 of Regulation S-X[,]" which includes Item 10 of Regulation S-K. *See* Item 14(7)(b)(11) of 17 C.F.R. § 240.14a-101.

31.   Under Item 10 of Regulation S-K, companies are encouraged to disclose "management's projections of future economic performance that have a reasonable basis and are presented in an appropriate format." 17 C.F.R. § 229.10(b). Although the SEC recognizes the usefulness of disclosing projected financial metrics, the SEC cautions companies to "take care to assure that the choice of items projected is not susceptible of misleading inferences through selective projection of only favorable items." 17 C.F.R. § 229.10(b)(2).

32.   In order to facilitate investor understanding of the Company's financial projections, the SEC provides companies with certain factors "to be considered in formulating and disclosing such projections[,]" including:

> (i) When management chooses to include its projections in a Commission filing, *the disclosures accompanying the projections should facilitate investor understanding of the basis for and limitations of projections.* In this regard investors should be cautioned against attributing undue certainty to management's assessment, and the Commission believes that investors would be aided by a statement indicating management's intention regarding the furnishing of updated projections. *The Commission also believes that investor understanding would be enhanced by disclosure of the assumptions which in management's opinion are most significant to the projections or are the key factors upon which the financial results of the enterprise depend and encourages disclosure of assumptions in a manner that will provide a framework for analysis of the projection.*

> (ii) Management also should consider whether disclosure of the accuracy or inaccuracy of previous projections would provide investors with important insights into the limitations of projections. In this regard, *consideration should be given to presenting the projections in a format that will facilitate subsequent analysis of the reasons for differences between actual and forecast results.* An important benefit may arise from the systematic analysis of variances between projected and actual

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

results on a continuing basis, since such disclosure may highlight for investors the most significant risk and profit-sensitive areas in a business operation.

17 C.F.R. § 229.10(b)(3) (emphasis added).

33.    Here, WageWorks's shareholders would clearly find complete and non-misleading financial projections material in deciding how to vote, considering that in making its recommendation that shareholders vote in favor of the Proposed Transaction, the Board specifically relied on the financial forecasts to determine "that the merger is in the best interests of the WageWorks stockholders[.]" Proxy 35-36.

34.    As discussed further below, the non-GAAP financial projections here do not provide WageWorks's shareholders with a materially complete understanding of the assumptions and key factors considered in developing financial projections, which assumptions, factors and other inputs the Board reviewed.

### *The Financial Projections Relied on by the Board*

35.    The Proxy discloses that "[i]n connection with the merger, our management prepared and provided to the WageWorks board in connection with its evaluation of the merger, and to Evercore, its financial advisor, in connection with its financial analyses . . . certain nonpublic, internal financial projections regarding WageWorks' future performance for fiscal years 2019 through 2024 . . . ." *Id.* at 46

36.    The Proxy further discloses that the assumptions used in the financial projections were "[i]n the view of our management, the base case projections have been reasonably prepared by our management on bases reflecting the best currently available estimates and judgments of our management of the future financial performance of WageWorks" *Id.* at 48

37.    Two sets of projections appear in the Proxy: the Base Case and the Alternative Scenario.  *Id.* at 47.  Both the Base Case and the Alternative Scenario projections contain projections with and without hypothetical acquisitions.  *Id.*

- 11 -

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

38.     The Proxy goes on to disclose, *inter alia*, forecasted values for projected non-GAAP (Generally Accepted Accounting Principles) financial metrics for 2019 through 2024 for: (1) Adjusted EBITDA; (2) NOPAT; and (3) Free Cash Flow but fails to provide (i) the line items used to calculate these non-GAAP metrics nor (ii) a reconciliation of these non-GAAP projections to the most comparable GAAP measures.  *Id.*

39.     The Proxy defines Adjusted EBITDA as "a non-GAAP financial measure calculated as earnings before interest, taxes, depreciation and amortization, stock-based compensation expense and non-recurring items."  *Id.* at 47 n.1.  Nevertheless, the Proxy fails to reconcile Adjusted EBITDA to its most comparable GAAP measure nor disclose the line items used to calculate Adjusted EBITDA, rendering the Proxy materially false and/or misleading.  *Id.*

40.     The Proxy defines NOPAT as "a non-GAAP financial measure calculated as Adjusted EBITDA less depreciation and amortization and tax expenses."  *Id.* at 47 n.2.  Nevertheless, the Proxy fails to reconcile NOPAT to its most comparable GAAP measure nor disclose the line items used to calculate NOPAT, rendering the Proxy materially false and/or misleading.  *Id.* at 47.

41.     The Proxy defines free cash flow ("FCF") as "a non-GAAP financial measure calculated as NOPAT, plus depreciation and after-tax amortization, and less after-tax share based compensation, changes in net working capital and capital expenditures."   *Id.* at 47 n.3.  Nevertheless, the Proxy fails to reconcile FCF to its most comparable GAAP measure nor disclose the line items used to calculate FCF, rendering the Proxy materially false and/or misleading.  *Id.* at 47.

42.     Thus, the Proxy's disclosure of these non-GAAP financial forecasts provides an incomplete and materially misleading understanding of the Company's future financial prospects and the inputs and assumptions for which those prospects are based upon.  It is clear that those inputs and assumptions were in fact forecasted and utilized in calculating the non-GAAP measures

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

Case No. 3:19-cv-04532

disclosed and relied on by the Board to recommend the Proposed Transaction in violation of Section 14(a) of the Exchange Act.

43.     The financial projections disclosed on page 47 of the Proxy violate Section 14(a) of the Exchange Act because: (i) the use of such forecasted non-GAAP financial measures alone violates SEC Regulation G, as a result of Defendants' failure to reconcile those non-GAAP measures to their closest GAAP equivalent or otherwise disclose the specific financial assumptions and inputs used to calculate the non-GAAP measures; and (ii) they violate SEC Regulation 14a-9 because they are materially misleading, as shareholders are unable to discern the veracity of the financial projections.

44.     As such, this information must be disclosed in order to cure the materially misleading disclosures regarding both the financial projections developed by the Company as well as the projections relied upon by the Company's financial advisors.

### *The Financial Projections Violate Regulation G*

45.     The SEC has acknowledged that potential "misleading inferences" are exacerbated when the disclosed information contains non-GAAP financial measures[1] and adopted Regulation G[2] "to ensure that investors and others are not misled by the use of non-GAAP financial measures."[3]

46.     Defendants must comply with Regulation G.  More specifically, the company must disclose the most directly comparable GAAP financial measure <u>and</u> a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated

---

[1]     Non-GAAP financial measures are numerical measures of future financial performance that exclude amounts or are adjusted to effectively exclude amounts that are included in the most directly comparable GAAP measure.  17 C.F.R. § 244.101(a)(1).

[2]     Items 10 of Regulations S-K and S-B were amended to reflect the requirements of Regulation G.

[3]     SEC, *Final Rule: Conditions for Use of Non-GAAP Financial Measures* (Jan. 22, 2003), *available at* https://www.sec.gov/rules/final/33-8176.htm ("SEC, *Final Rule*").

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

Case No. 3:19-cv-04532

and presented in accordance with GAAP.  17 C.F.R. § 244.100.  This is because the SEC believes "this reconciliation will help investors . . . to better evaluate the non-GAAP financial measures . . . . [and] more accurately evaluate companies' securities and, in turn, result in a more accurate pricing of securities."[4]

47.    Moreover, the SEC has publicly stated that the use of non-GAAP financial measures can be misleading.[5]  Former SEC Chairwoman Mary Jo White has stated that the frequent use by publicly traded companies of unique company-specific non-GAAP financial measures (as WageWorks included in the Proxy here) implicates the centerpiece of the SEC's disclosures regime:

> In too many cases, the non-GAAP information, which is meant to supplement the GAAP information, has become the key message to investors, crowding out and effectively supplanting the GAAP presentation. Jim Schnurr, our Chief Accountant, Mark Kronforst, our Chief Accountant in the Division of Corporation Finance and I, along with other members of the staff, have spoken out frequently about our concerns to raise the awareness of boards, management and investors.  And last month, the staff issued guidance addressing a number of troublesome practices *which can make non-GAAP disclosures misleading*: the lack of equal or greater prominence for GAAP measures; exclusion of normal, recurring cash operating expenses; individually tailored non-GAAP revenues; lack of consistency; cherry-picking; and the use of cash per share data.  I strongly urge companies to carefully consider this guidance and revisit their approach to non-GAAP disclosures.  I also urge again, as I did last December, that appropriate controls be considered and that audit committees carefully oversee their company's use of non-GAAP measures and disclosures.[6]

---

[4]    SEC, *Final Rule.*

[5]    *See, e.g.*, Nicolas Grabar and Sandra Flow, *Non-GAAP Financial Measures: The SEC's Evolving Views*, Harvard Law School Forum on Corporate Governance and Financial Regulation (June 24, 2016), *available at* https://corpgov.law.harvard.edu/2016/06/24/non-gaap-financial-measures-the-secs-evolving-views/; Gretchen Morgenson, *Fantasy Math Is Helping Companies Spin Losses Into Profits*, N.Y. Times, Apr. 22, 2016, *available at* http://www.nytimes.com/2016/04/24/business/fantasy-math-is-helping-companies-spin-losses-into-profits.html?_r=0.

[6]    Mary Jo White, *Keynote Address, International Corporate Governance Network Annual Conference: Focusing the Lens of Disclosure to Set the Path Forward on Board Diversity, Non-GAAP, and Sustainability* (June 27, 2016), *available at* https://www.sec.gov/news/speech/chair-white-icgn-speech.html (emphasis added) (footnotes omitted).

- 14 -

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

Case No. 3:19-cv-04532

48.    The SEC has required compliance with Regulation G, including reconciliation requirements, in other merger transactions. *Compare Youku Tudou Inc., et al.*, Correspondence 5 (Jan. 11, 2016) (Issuer arguing that Rule 100(d) of Regulation G does not apply to non-GAAP financials relating to a business combination)[7], *with Youku Tudou Inc., et al.*, SEC Staff Comment Letter 1 (Jan. 20, 2016) ("[The SEC] note[s] that your disclosure of projected financial information is not in response to the requirements of, or pursuant to, Item 1015 of Regulation M-A and is thus not excepted from Rule 100 of Regulation G.");[8] *see Harbin Electric, Inc.*, Correspondence 29 (Aug. 12, 2011) ("Pursuant to the requirements of Regulation G, we have added a reconciliation of actual and projected EBIT to GAAP net income . . . .").[9]

49.    Compliance with Regulation G is mandatory under Section 14(a), and non-compliance constitutes a violation of Section 14(a).  Thus, in order to bring the Proxy into compliance with Regulation G, Defendants must provide a reconciliation of the non-GAAP financial measures to their respective most comparable GAAP financial measures.

---

[7]    *Available at* https://www.sec.gov/Archives/edgar/data/1442596/000110465916089133/filename1.htm.

[8]    *Available at* https://www.sec.gov/Archives/edgar/data/1442596/000000000016062042/filename1.pdf.

[9]    *Available at* https://www.sec.gov/Archives/edgar/data/1266719/000114420411046281/filename1.htm. *See also Actel Corp.*, SEC Staff Comment Letter 2 (Oct. 13, 2010) ("Opinion of Actel's Financial Advisor, page 24 . . . This section includes non-GAAP financial measures.  Please revise to provide the disclosure required by Rule 100 of Regulation G."), *available at* https://www.sec.gov/Archives/edgar/data/907687/000000000010060087/filename1.pdf. *See also The Spectranetics Corp.*, SEC Staff Comment Letter 1 (July 18, 2017) ("Item 4. The Solicitation or Recommendation Certain Spectranetics Forecasts, page 39 . . . [P]rovide the reconciliation required under Rule 100(a) of Regulation G"), *available at* https://www.sec.gov/Archives/edgar/data/789132/000000000017025180/filename1.pdf.   The SEC Office of Mergers and Acquisitions applied Regulation G in these transactions, which reflects the SEC's official position.  Any claim that the SEC has officially sanctioned the use of non-GAAP financial forecasts for business combinations when the Board itself created and relied on such non-GAAP forecasts to recommend a transaction such as the Proposed Transaction is incorrect. The SEC's website provides certain unofficial guidance for certain matters, called Compliance and Disclosure Interpretations ("C&DI's") which through the use of Q&As reflect the views of particular SEC staff and on which certain issuers have in the past claimed an exemption from Regulation G.  The SEC itself expressly disclaims C&DI's as they are not regulations that have been reviewed by the SEC, and the SEC expressly states that they are not binding and should not be relied on. *See* www.sec.gov/divisions/corpfin/cfguidance.shtml.

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

Case No. 3:19-cv-04532

1

*__The Financial Projections are Materially Misleading and Violate SEC Rule 14a-9__*

2       50.     In addition to the Proxy's violation of Regulation G, the lack of reconciliation or,

3   at the very least, the line items utilized in calculating the non-GAAP measures render the financial

4   forecasts disclosed materially misleading, as shareholders are unable to understand the differences

5   between the non-GAAP financial measures and their respective most comparable GAAP financial

6   measures. Nor can shareholders compare the Company's financial prospects with similarly

7   situated companies.

8       51.     Such projections are necessary to make the non-GAAP projections included in the

9   Proxy not misleading for the reasons discussed above.  Indeed, Defendants acknowledge "[t]hese

10  non-GAAP financial measures should not be viewed as a substitute for GAAP financial measures,

11  and may be different from non-GAAP financial measures used by other companies. Furthermore,

12  there are limitations inherent in non-GAAP financial measures, because they exclude charges and

13  credits that are required to be included in a GAAP presentation. Accordingly, these non-

14  GAAP financial measures should be considered together with, and not as an alternative to,

15  financial measures prepared in accordance with GAAP."  Proxy 48.

16      52.     Furthermore, using the term "Free Cash Flow" is misleading as it is not initially

17  clear that this is the same as the unlevered free cash flow that Evercore uses in its discounted cash

18  flow analysis as opposed to separate levered free cash flow values.  As FCF is a non-GAAP metric,

19  the Company can define it in any way it wants.  In this case, the Company choose to define FCF

20  in a way that would traditionally be called unlevered free cash flows.  Providing the line items and

21  a reconciliation would remove any doubt from shareholders that this term was not the same as

22  unlevered free cash flow, the type of free cash flow used by Evercore, and would therefore remove

23  the misleading nature of the name from this non-GAAP metric.

24      53.     As such, financial projections are plainly material, and shareholders would clearly

25  want a complete and non-misleading understanding of those projections.

26      54.     In order to cure the materially misleading nature of the projections under SEC Rule

27                                          - 16 -

28  **CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF**
    **THE SECURITIES EXCHANGE ACT OF 1934**

1  14a-9 as a result of the omitted information on page 47, Defendants must provide a reconciliation

2  table of the non-GAAP financial measures to the most comparable GAAP measures.

3       ***The Materially Misleading Financial Analyses***

4       55.     The summary of the valuation methodologies utilized by Evercore including the

5  utilization of certain of the non-GAAP financial projections described above by Evercore, in

6  connection with its valuation analyses, (*id.* at 39) is misleading in violation of Regulation 14a-9.

7  The opacity concerning the Company's internal projections renders the valuation analyses

8  described below materially incomplete and misleading, particularly as companies formulate non-

9  GAAP metrics differently. Once a proxy discloses internal projections relied upon by the Board,

10  those projections must be complete and accurate.

11       56.     With respect to Evercore's *Selected Transactions Analysis*, the Proxy states

12  Evercore identified seven transactions announced since 2005 involving similar companies in

13  similar industries and calculated the total enterprise value (defined as the target company's implied

14  equity value based on the consideration paid in the applicable transaction plus total debt, plus

15  preferred equity and minority interest, less cash, cash equivalents and customer obligations) as a

16  multiple of last twelve-month revenue and last twelve-month Adjusted EBITDA for the target

17  company at the time of the announcement.  *Id.* at 41.  The analysis contains old transactions and it

18  is not clear that multiples in those transaction continue to represent current market multiples.  The

19  Proxy discloses the high, low and mean multiples, but the failure to provide the individual

20  multiples for the transaction is misleading because shareholders are not able to see how the more

21  recent transactions compare with the older ones.  *Id.* at 41-42.  Indeed, only three of the seven

22  transactions even took place within the past five years.  *Id.* at 41.  Shareholders need the individual

23  multiples in order to determine what multiples appear to be representative of today's market rather

24  than as of a time before the 2008 recession, so that they can be fully informed as to Evercore's

25  analysis and determine the fair value of their shares.

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF
THE SECURITIES EXCHANGE ACT OF 1934**

Case No. 3:19-cv-04532

57.     With respect to Evercore's *Equity Research Analyst Price Targets*, the Proxy fails to disclose the individual price targets and identify their sources. *Id.* at 45.

58.     With respect to Evercore's *Discounted Cash Flow Analysis*, the Proxy states that Evercore calculated the Company's estimated unlevered, after-tax free cash flows using the Base Case projections with and without taking into account alternative business assumptions with respect to WageWorks' hypothetical acquisitions provided by management. *Id.* at 40.  Evercore used a perpetuity growth rate of 2% to 5% to calculate the estimated terminal value. *Id.*  Evercore discounted the cash flows and the terminal values to June 30, 2019 using a discount rate of 9.5% to 10.5% based on the Company's weighted average cost of capital. *Id.*  Evercore then subtracted the Company's net debt and divided by the number of fully diluted shares of WageWorks common stock (including promised but ungranted employee options), as provided by management.

59.     Additionally, Evercore performed the same analysis on the Alternative Scenario projections using the same discount rates and perpetuity growth rates.

60.     The Proxy does not provide the information Evercore utilized in the *Discounted Cash Flow Analysis*. The Proxy did not disclose the values Evercore calculated for the range of terminal values, any of the inputs that went into calculating the Company's weighted average cost of capital, the inputs and assumptions that went into selecting the perpetual growth rate, the net debt nor the fully diluted shares (including promised but ungranted employee options).

61.     Since information was omitted, shareholders are unable to discern the veracity of Evercore's *Discounted Cash Flow Analysis*.  Without further disclosure, shareholders are unable to compare Evercore's calculations with the Company's financial projections.  The absence of any single piece of the above information renders Evercore's *Discounted Cash Flow Analysis* incomplete and misleading.  Thus, the Company's shareholders are being materially misled regarding the value of the Company.

62.     As a highly-respected professor explained in one of the most thorough law review articles regarding the fundamental flaws with the valuation analyses bankers perform in support

- 18 -

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

of fairness opinions, in a discounted cash flow analysis a banker takes management's projections and then makes several key choices "each of which can significantly affect the final valuation." Steven M. Davidoff, *Fairness Opinions*, 55 Am. U.L. Rev. 1557, 1576 (2006). Such choices include "the appropriate discount rate, and the terminal value . . . ." *Id.* As Professor Davidoff explains:

> There is substantial leeway to determine each of these, and any change can markedly affect the discounted cash flow value . . . . The substantial discretion and lack of guidelines and standards also makes the process vulnerable to manipulation to arrive at the "right" answer for fairness. This raises a further dilemma in light of the conflicted nature of the investment banks who often provide these opinions[.]

*Id.* at 1577-78 (footnotes omitted).

63. Therefore, in order for WageWorks shareholders to become fully informed regarding the fairness of the Merger Consideration, the material omitted information must be disclosed to shareholders.

64. In sum, the Proxy independently violates both (i) Regulation G, which requires a presentation and reconciliation of any non-GAAP financial to their most directly comparable GAAP equivalent, and (ii) Rule 14a-9, since the material omitted information renders certain statements, discussed above, materially incomplete and misleading. As the Proxy independently contravenes the SEC rules and regulations, Defendants violated Section 14(a) and Section 20(a) of the Exchange Act by filing the Proxy to garner votes in support of the Proposed Transaction from WageWorks shareholders.

65. Absent disclosure of the foregoing material information prior to the special shareholder meeting to vote on the Proposed Transaction, Plaintiff and the other members of the Class will not be able to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and they are thus threatened with irreparable harm, warranting the injunctive relief sought herein.

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

66.     Further, failure to remedy the deficient Proxy and consummate the Proposed Transaction will directly and proximately cause damages and actual economic loss to shareholders (*i.e.* the difference between the value to be received as a result of the Proposed Transaction and the true value of their shares prior to the merger), in an amount to be determined at trial, to Plaintiff and the Class.

## COUNT I
### (Against All Defendants for Violations of Section 14(a) of the Exchange Act and 17 C.F.R. § 244.100 Promulgated Thereunder)

67.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

68.     Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title."  15 U.S.C. § 78n(a)(1).

69.     As set forth above, the Proxy omits information required by SEC Regulation G, 17 C.F.R. § 244.100, which independently violates Section 14(a).  SEC Regulation G, among other things, requires an issuer that chooses to disclose a non-GAAP measure to provide a presentation of the "most directly comparable" GAAP measure and a reconciliation "by schedule or other clearly understandable method" of the non-GAAP measure to the "most comparable" GAAP measure.  17 C.F.R. § 244.100(a).

70.     The failure to reconcile the non-GAAP financial measures included in the Proxy violates Regulation G and constitutes a violation of Section 14(a).

71.     As a direct and proximate result of the dissemination of the false and/or misleading Proxy Defendants used to recommend that shareholders approve the Proposed Transaction,

- 20 -

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

Plaintiff and the Class will suffer damages and actual economic losses (i.e. the difference between the value they will receive as a result of the Proposed Transaction and the true value of their shares prior to the merger) in an amount to be determined at trial and are entitled to such equitable relief as the Court deems appropriate, including rescissory damages.

## COUNT II
### (Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder)

72.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

73.     SEC Rule 14a-9 prohibits the solicitation of shareholder votes in registration statements that contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading[.]" 17 C.F.R. § 240.14a-9(a).

74.     Regulation G similarly prohibits the solicitation of shareholder votes by "mak[ing] public a non-GAAP financial measure that, taken together with the information accompanying that measure . . . contains an untrue statement of a material fact or *omits to state a material fact necessary in order to make the presentation of the non-GAAP financial measure . . . not misleading.*" 17 C.F.R. § 244.100(b) (emphasis added).

75.     Defendants have issued the Proxy with the intention of soliciting shareholder support for the Proposed Transaction.  Each of the Defendants reviewed and authorized the dissemination of the Proxy, which fails to provide critical information regarding, amongst other things, the financial projections for the Company.

76.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as directors and/or officers, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).  The Individual Defendants were

- 21 -

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy but nonetheless failed to obtain and disclose such information to shareholders although they could have done so without extraordinary effort.

77.    The Individual Defendants knew or were negligent in not knowing that the Proxy is materially misleading and omits material facts that are necessary to render it not misleading. The Individual Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction.

78.    The Individual Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy, rendering the sections of the Proxy identified above to be materially incomplete and misleading.

79.    The Individual Defendants were, at the very least, negligent in preparing and reviewing the Proxy.  The preparation of a registration statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.  The Individual Defendants were negligent in choosing to omit material information from the Proxy or failing to notice the material omissions in the Proxy upon reviewing it, which they were required to do carefully as the Company's directors.  Indeed, the Individual Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation of the Company's financial projections.

80.    WageWorks is also deemed negligent as a result of the Individual Defendants' negligence in preparing and reviewing the Proxy.

81.    The misrepresentations and omissions in the Proxy are material to Plaintiff and the Class, who will be deprived of their right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.

82.    As a direct and proximate result of the dissemination of the false and/or misleading Proxy Defendants used to recommend that shareholders approve the Proposed Transaction,

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

1  Plaintiff and the Class will suffer damages and actual economic losses (i.e. the difference between

2  the value they will receive as a result of the Proposed Transaction and the true value of their shares

3  prior to the merger) in an amount to be determined at trial and are entitled to such equitable relief

4  as the Court deems appropriate, including rescissory damages.

## COUNT III

**(Against the Individual Defendants for Violations
of Section 20(a) of the Exchange Act)**

8  83.    Plaintiff incorporates each and every allegation set forth above as if fully set forth

9  herein.

10  84.    The Individual Defendants acted as controlling persons of WageWorks within the

11  meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as

12  directors and/or officers of WageWorks, and participation in and/or awareness of the Company's

13  operations and/or intimate knowledge of the incomplete and misleading statements contained in

14  the Proxy filed with the SEC, they had the power to influence and control and did influence and

15  control, directly or indirectly, the decision making of the Company, including the content and

16  dissemination of the various statements that Plaintiff contends are materially incomplete and

17  misleading.

18  85.    Each of the Individual Defendants was provided with or had unlimited access to

19  copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or

20  shortly after these statements were issued and had the ability to prevent the issuance of the

21  statements or cause the statements to be corrected.

22  86.    In particular, each of the Individual Defendants had direct and supervisory

23  involvement in the day-to-day operations of the Company and, therefore, is presumed to have had

24  the power to control or influence the particular transactions giving rise to the Exchange Act

25  violations alleged herein and exercised the same.  The Proxy at issue contains the unanimous

26

27

28

- 23 -

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF
THE SECURITIES EXCHANGE ACT OF 1934**

Case No. 3:19-cv-04532

recommendation of each of the Individual Defendants to approve the Proposed Transaction.  They were thus directly involved in preparing the Proxy.

87.     In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered.  The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

88.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

89.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff and the Class will be irreparably harmed.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.     Declaring that this action is properly maintainable as a Class Action and certifying Plaintiff as Class Representative and his counsel as Class Counsel;

B.     Enjoining Defendants and all persons acting in concert with them from proceeding with the shareholder vote on the Proposed Transaction or consummating the Proposed Transaction, unless and until the Company discloses the material information discussed above which has been omitted from the Proxy;

C.     Directing Defendants to account to Plaintiff and the Class for all damages sustained as a result of their wrongdoing and to award damages arising from proceeding with the Proposed Transaction;

D.     Awarding Plaintiff the costs and disbursements of this action, including reasonable

- 24 -

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

Case No. 3:19-cv-04532

attorneys' and expert fees and expenses; and

      E.     Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

    Plaintiff demands a trial by jury on all issues so triable.

Dated:  August 2, 2019

Respectfully submitted,

**FARUQI & FARUQI, LLP**

**OF COUNSEL:**

**FARUQI & FARUQI, LLP**

Nadeem Faruqi
James M. Wilson, Jr.
685 Third Ave., 26th Fl.
New York, NY 10017
Telephone: (212) 983-9330
Email: nfaruqi@faruqilaw.com
Email: jwilson@faruqilaw.com

*Counsel for Plaintiff*

By: */s/ Benjamin Heikali*
Benjamin Heikali, Bar No. 307466
10866 Wilshire Blvd., Suite 1470
Los Angeles, CA 90024
Tel.: (424) 256-2884
Fax: (424) 256-2885
Email: bheikali@faruqilaw.com

*Counsel for Plaintiff*

- 25 -

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

## CERTIFICATION OF PROPOSED LEAD PLAINTIFF

I, Charles Glass ("Plaintiff"), declare, as to the claims asserted under the federal securities

laws, that:

1.  Plaintiff has reviewed a draft complaint against Wageworks, Inc. ("Wageworks") and its board of directors and has authorized the filing of a complaint substantially similar to the one I reviewed.

2.  Plaintiff selects Faruqi & Faruqi, LLP and any firm with which it affiliates for the purpose of prosecuting this action as my counsel for purposes of prosecuting my claim against defendants.

3.  Plaintiff did not purchase the security that is the subject of the complaint at the direction of Plaintiff's counsel or in order to participate in any private action arising under the federal securities laws.

4.  Plaintiff is willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary.

5.  Plaintiff's transactions in Wageworks securities that are the subject of the complaint during the class period specified in the complaint are set forth in the chart attached hereto.

6.  In the past three years, Plaintiff has not sought to serve nor has served as a representative party on behalf of a class in an action filed under the federal securities laws, except as specified below:

7.  Plaintiff will not accept any payment for serving as a representative party on behalf of a class beyond plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the Class as ordered or approved by the Court.

I declare under penalty of perjury under the laws of the United States that the foregoing information is correct to the best of my knowledge.

Signed this 1st day of August, 2019.


_____
Charles Glass

| Transaction (Purchase or Sale) | Trade Date | Quantity |
|---|---|---|
| Purchase | 08/21/18 | 325 |
|  |  |  |
|  |  |  |